(November 5, 1981)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT S. GRISWOLD, Appellant. — Appeal from a judgment of the County Court of Tioga County (Ingraham, J.), rendered June 1, 1979, upon a verdict convicting defendant of the crime of murder in the second degree. Defendant, allegedly acting in concert with others, was charged with causing the death of one Harriet Griswold. He was indicted and tried for intentional murder, felony murder, and second degree arson. A jury found him not guilty of the intentional murder, and of the lesser included offense of manslaughter, but guilty of arson. As for the felony murder count, after 13 hours of deliberation the jury was unable to agree and a mistrial was declared. On retrial of the felony murder count, defendant was convicted and this appeal followed. Defendant maintains, *inter alia,* that the retrial violated the prohibition against double jeopardy and that statements, both oral and written, made by him to the police after he was in custody, were taken in contravention of his right to counsel and erroneously admitted into evidence. The decision as to whether it is manifestly

necessary to discharge a jury rests within the discretion of the Trial Judge. That discretion was not abused here. After deliberating on this three-count indictment over a span of two days, during which time the jury requested that various portions of the charge as well as certain testimony be reread, the jury on its own initiative returned and the foreman announced that verdicts had been reached in all but the felony murder count. As to that count, he advised the court that the jury could not agree. When asked by the court, "Do you have an opinion, as foreman of the jury, whether, if I direct you to continue your deliberations, you can reach a verdict within a reasonable period of time?", the foreman responded that it was his opinion the jury would be unable to reach a decision. The record discloses that these jurors were not reluctant to direct inquiries to the court during the charge and while they were deliberating. Had the situation been other than the foreman indicated, it is highly likely the jurors would have disavowed his statement. Furthermore, if defendant truly held to the view, at that time, that any juror harbored the notion that continued deliberation was desirable, he undoubtedly would have requested the jury be polled. Much more compelling is defendant's assertion that his constitutional right to counsel was violated. Two apparently disinterested witnesses, co-workers of defendant, testified that when he was taken into custody at his place of employment he asked to see a lawyer. However, the officers escorting defendant testified that they heard no such request. Thereafter, defendant gave the incriminating written and oral statements at issue. These statements comprise some of the most damaging evidence offered against him. Upon the first trial, it was concluded that these statements were voluntarily procured after *Miranda* warnings had been administered *(People v Griswold,* 64 AD2d 765). On retrial, the jury was also presented with the question of whether Griswold's statements were "voluntary". Determination of the voluntariness of the statements, without first resolving the disputed fact issue of whether Griswold had requested counsel when he was initially taken into custody, was consistent with applicable law at the time. However, *People v Cunningham* (49 NY2d 203), thereafter decided, prescribes that once a suspect in custody requests assistance of counsel, he cannot be questioned further in the absence of an attorney. Retroactive application of this principle is dictated by *People v Pepper* (53 NY2d 213). As a consequence, if Griswold did indeed invoke his right to counsel, his subsequent uncounseled waiver of that right was void and the statements given thereafter were inadmissible. The jury in the second trial was charged that if it found that Griswold was afforded his *Miranda* rights and that he knowingly and voluntarily waived those rights, his statements were admissible in evidence. However, measured by the standard announced in *Cunningham (supra),* this instruction was prejudicially incorrect for it enabled the jurors to consider Griswold's statements on the question of his guilt, even if they found as a fact that he had asked for counsel's assistance earlier. Defendant's statements having been admitted without a prior determination having been made respecting whether he had actually requested counsel, his conviction must be reversed and a new trial ordered. Judgment reversed, on the law, and new trial ordered. Main, J. P., Mikoll, Yesawich, Jr., and Weiss, JJ., concur.

Herlihy, J., dissents and votes to affirm in the following memorandum. Herlihy, J. (dissenting). We are concerned here with the second trial in which defendant was convicted of murder in the second degree on which issue the jury disagreed at the first trial. The second trial was *de novo* and defendant was in the position of having pleaded "not guilty". He was afforded the opportunity of all of the omnibus motions, including a new *Huntley* hearing, had he so requested. All of the evidence in the prior trial was within the knowledge of defendant and his counsel, but they elected to proceed to trial,

apparently satisfied with the motions and other details held prior to the first trial. The Trial Judge, in his charge to the jury, *inter alia,* read the *Miranda* warning *in toto*. He further charged: "I charge you that the fact that police officers testified does not add to or detract from their credibility". At the conclusion of the trial, the following colloquy took place in chambers: "BY MR. BRISTER: I would like to have the jury charged that if they believe the two witnesses who testified that the defendant asked for an attorney that this fact must be considered in determining the voluntariness of the later statements that were taken. * * * BY THE COURT: This is my problem. When we get into specifics of trying to point out salient facts that were introduced during the trial and then we have them into the fabric of the charge, you run into a danger of our being here all day going through fact by fact. I am going to at this time deny both of your requests insofar as we start getting into details. I think I covered your request." During its deliberation, the jury returned and asked a question as to corroboration to which, once again, the court advised the jury as to the statements given by defendant and his rights. Several months after the conclusion of the trial and while the matter was on appeal to this court, the Court of Appeals decided *People v Cunningham* (49 NY2d 203), which the majority finds mandates a reversal and new trial. However, the facts and the law in that case are not, in my opinion, applicable here. In the present case, defendant could have, prior to trial, requested a hearing as to whether he was afforded the right to counsel, which he did not do. At the trial, the issue was before the jury as witnesses testified pro and con. In my opinion, under the circumstances, the Judge was correct in refusing defendant's request in the form submitted for the reasons stated by the court. The majority does not find the statements to be involuntary as a matter of law, nor does it suggest that the trial court erred in admitting the statements in evidence. In the absence of an objection to the court's charge on waiver, the denial of defendant's request was not error. It is evident from the record that the jury fully understood all of the issues involved. The theory of retroactivity should not be used to require a new trial solely for the opportunity to make a jury question of an issue which may or may not be charged on the question of voluntariness. There must be finality to these cases when the record amply demonstrates, as here, that defendant had a fair trial. The judgment should be affirmed.